| | |
|---|---|
| United States District Court<br>Eastern District of New York | 1:18-cv-02250 |
| Marilyn Reyes individually and on behalf of all others similarly situated<br><br>Plaintiff<br><br>- against -<br><br>Crystal Farms Refrigerated Distribution Company<br><br>Defendant | Complaint |

The above-named plaintiff individually and on behalf of all others similarly situated, by attorneys, alleges upon information and belief, except for those allegations pertaining to plaintiff, which are based on personal knowledge:

1. Crystal Farms Refrigerated Distribution Company ("defendant") distributes, markets, labels and sells refrigerated ready-to-eat mashed potatoes under the "Diner's Choice" brand (the "Products").

2. The Products are available in no fewer than the following varieties:

- Traditional Mashed Potatoes
- Garlic Mashed Potatoes
- Country Style Mashed Potatoes
- Sweet Mashed Potatoes

3. The Products are sold to consumers by third-parties from brick-and-mortar stores and online, and available in 24 and 32-ounce packages.

4. The front labels include (i) an image of mashed potatoes, (ii) ingredients which distinguish that variety (i.e., garlic is represented as a graphical image) and (iii) "Made With REAL BUTTER" in a golden "seal" form, and (iv) "Made With Fresh Whole Potatoes," which is also contained on the side flaps of the Products.



6. The representations are misleading because despite the centrality of butter to their marketing and labeling, they also contain margarine, as the third ingredient listed below.

Information Panel                      Ingredient List



2

7. The brand name, "Diner's Choice" is unironically affixed to Products where consumers (diners) do not get to make that all-important decision when it comes to mashed potatoes – choosing butter or margarine – and instead, they get both.

8. No reasonable consumer would expect a mashed potatoes product which highlights, "Made With REAL BUTTER" in a golden seal, to contain the one product which is essentially the opposite of butter – margarine.

9. This is because butter and margarine have forever been rival food products unlike any other foods which have existed.

10. Butter is the quintessential natural and simple food, produced by churning the cream at the top of a cow's milk until the fat solidifies.

11. According to archaeologists, butter was discovered accidentally by nomadic herdsmen of the Neolithic-era, who attached sacks containing milk to their pack animals, and after days of jostling, the milk would be churned into butter.

12. Margarine, on the other hand, was invented because of the French government's efforts to develop a lower quality and cheaper butter alternative in the late 19th century.

13. Margarine is made by converting vegetable oils from liquid to solid through hydrogenation, fractionation and interesterification, in the presence of chemical and enzymatic catalysts.

14. From the beginning of margarine's introduction to the U.S., there was coordinated opposition by the dairy lobby, resulting in The Oleomargarine Act of 1886, which taxed margarine and defined butter.[1]

---

[1] Geoffrey P. Miller, *Public Choice at the Dawn of the Special Interest State: The Story of Butter and Margarine*, Cal. Law Review 77 (1989) (describing the rise of the dairy lobby in response to margarine's introduction to the U.S.); W. T. Mickle, *Margarine Legislation*, American Journal of Agricultural Economics (Aug. 1941).

15. Numerous states banned margarine altogether, while other banned margarine manufacturers from coloring the product yellow to fraudulently sell it as butter.

16. To prevent the margarine industry from tricking consumers, several states required margarine be dyed pink, red and brown, so that consumers would not confuse it with butter.[2]

17. The Great Depression and World War II caused margarine consumption to increase, due to its lower cost, and the rationing and shortages of butter.

18. In the post-war decades, margarine consumption surpassed butter, because of its low price, convenience and public health guidance which warned against saturated fats in butter.

19. By the mid-1970s, margarine consumption was three times that of butter.

20. Gradually, scientists reassessed the harm of saturated fat (butter) and discovered that margarine contained even more harmful trans fats, caused by hydrogenation.

21. Additionally, scientific consensus shifted from holding fat content responsible for the epidemic of health-related issues as opposed to other food components, such as sugar.

22. When consumers eat mashed potatoes, they are typically prepared or consumed with fats and oils, like butter or margarine.

23. The naturally dry texture of potatoes requires a lipid ingredient to enhance their texture, viscosity, palatability and to provide lubrication in the mouth.

24. Consumers prefer butter over margarine in potatoes because they prefer butter's:

- unique and unduplicated taste, owing to more than 120 naturally occurring flavor compounds including methyl ketones and lactones;
- ability to enhance the texture and other qualities of (mashed) potato products;

---

[2] Rebecca Rupp, *The Butter Wars: When Margarine Was Pink*, National Geographic Blog – The Plate – Serving daily discussions on food (Aug. 13, 2014); see also Ruth Dupré, *"If It's Yellow, It Must be Butter": Margarine Regulation in North America Since 1886*, Journal of Econ. History, (1999).

4

- mouthfeel, since butter melts at a normal body temperature, while margarine has a higher melting point, resulting in a greasy aftertaste on the palate.

25. According to Mintel, the leading global market research firm, part of the reason for butter consumption now exceeding margarine is because 68% of consumers recognize butter as pure, natural, simple and minimally processed while margarine contains *too many* artificial ingredients.[3]

26. This distinction is evident from their sub-ingredients in the Products.

| Butter | Margarine |
|---|---|
| - Cream<br>- Salt | - Liquid and Hydrogenated Soybean Oil<br>- Water<br>- Salt<br>- Contains Less than 2% of<br>  - Whey Solids<br>  - Vegetable Mono & Diglycerides<br>  - Soy Lecithin<br>  - Sodium Benzoate (Preservative) |

27. To the extent reasonable consumers consume butter *and* margarine, this would only be done in separate foods (i.e., butter for baking muffins, margarine for preparing vegetables), instead of using a bit of each within the same food.

28. This is similar to how most people would prefer watching an entire movie (even a bad film) instead of seeing half of two highly regarded movies – variety is not always preferred.

29. These preferences are borne out by looking at how consumers eat mashed potatoes, through a review of Allrecipes.com, which has more user-contributed recipes than any other site

---

[3] Mintel, *Report on Butter, Margarine and Spreads – US (Aug. 2011)*; Brenda Reau, *Butter is Gaining Ground with Consumer Demand for Natural Products*, Michigan State University Extension Product Center (Sep. 15, 2011).

5

and is the most-visited recipe site[4].

30. This is shown and can be replicated by visiting google.com and entering the two combinations of Search Terms 1 and 2 followed by "site:allrecipes.com/recipe," as shown below.

| Subdomain URL | Search Term 1 | Search Term 2 | Results |
|---|---|---|---|
| site:allrecipes.com/recipe | "mashed potatoes" | "butter or margarine" | 171 |
| | | "butter and margarine" | 0 |

31. When "mashed potatoes" is combined with "butter or margarine," Allrecipes.com retrieves 171 distinct, user-generated recipes which include "mashed potatoes" in the name (i.e., Whipped Mashed Potatoes, Rosemary Mashed Potatoes, etc.).

32. In contrast, where "mashed potatoes" is combined with "butter and margarine," Allrecipes.com is unable to locate a single entry.

33. This illustrates that when consumers have mashed potatoes, they will seek a version which has butter or margarine, but never both.

34. Consumers reasonably expect food manufacturers to make products in a way that is familiar and appealing to them, based upon their typical experiences and preferences.

---

[4] According to the Alexa.com, the premier commercial internet traffic data firm, and eBizMBA.com, which combines data from Alexa with other similar services such as Compete and Quantcase.

35. Competitor refrigerated mashed potato products by Pineland Farms and Bob Evans, often adjacent to defendant's on grocery shelves, below, only use butter.

Front Label                  Ingredients






36. Consumers have strong preferences about butter and margarine.[5]

---

[5] Nina Martyris, *Operation Margarine: Tracing the Wartime Rise of Ersatz Butter*, Harper's Magazine – Blog (May 2, 2014) (describing the intensity of reactions brought about by replacing butter with margarine and noting "Margarine thrives on adversity, and its origins are rooted in it."); Libby Copeland, *New Book Clarifies Butter's Spread and Chronicles Its Wars With Margarine*, Smithsonian.com (Nov. 21, 2016) ("For decades there's been a huge butter versus margarine debate").

7

37. Food scientists who have studied the usage of butter vis-à-vis margarine confirmed this, noting that "consumers appeared to fall primarily into 2 groups: butter-only consumers, and margarine + butter consumers," because margarine loyalists "often used butter for special occasions or for baking."[6]

38. Another study came to a similar conclusion – though margarine users are open to having butter, those who prefer butter are unlikely to use margarine.[7]

39. The representations rely heavily on the term "fresh," claiming to be "Made With Fresh Whole Potatoes," though it never actually claims the Products are "fresh."

40. Rather, the Products use the term "fresh" in a manner which causes consumers to be misled, because defendant knows over 80% of consumers erroneously believe refrigerated mashed potatoes are fresh.

41. However, mass marketed refrigerated potato products such as Diner's Choice cannot be fresh because fresh mashed potatoes have a shelf-life between 7 and 10 days.

42. The Products' 3-month shelf life is due to artificial chemical preservatives including sodium benzoate, disodium pyrophosphate, potassium sorbate and sodium bisulfite.

43. Excluding tax, the Products cost no less than $3.99, a premium price compared to other similar products.

Jurisdiction and Venue

44. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

---

[6] A.J. Krause, *Identification of the Characteristics that Drive Consumer Liking of Butter*, Journal of Dairy Science (2007).
[7] M. Michicich, *Consumer Acceptance, Consumption and Sensory Attributes of Spreads Made from Designer Fats*, Food Quality and Preference (1999).

45. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

46. This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

47. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

48. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Class Allegations

49. The classes consist of (1) all consumers in all states and (2) all consumers in New York State who purchased any Products bearing any actionable representations during the statutes of limitation periods.

50. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

51. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

52. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff and class members are entitled to damages.

53. Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

54. Plaintiff is an adequate representative because his/her interests do not conflict with other members.

55. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

56. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

57. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

58. Plaintiff seeks class-wide injunctive relief because the practices continue.

## Parties

59. Plaintiff is a citizen of Kings County, New York.

60. Defendant is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota.

61. Plaintiff paid a premium relative to similar products because prior to purchase, he/she saw and relied on the label claims.

62. In 2017, plaintiff purchased the Product(s) for no less than $3.99 per Product(s), excluding tax, at a store(s) within this District and/or state.

## Violations of New York General Business Law §§ 349 & 350

63. Plaintiff incorporates by references all preceding paragraphs.

64. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

65. Plaintiff desired to purchase a mashed potatoes product that (1) had butter and not margarine, (2) was fresh.

66. Plaintiff reasonably believed based on defendant's representations that the Products contained butter and not margarine and were fresh.

67. Defendant's representations are false, deceptive and misleading for the reasons described herein.

68. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have without getting all they bargained for.

### Negligent Misrepresentation

69. Plaintiff incorporates by references all preceding paragraphs.

70. Defendant misrepresented the composition of the Products (1) by highlighting butter, giving consumers the impression that they only contained butter to the exclusion of margarine, since consumers do not use butter and margarine on mashed potatoes and (2) implying the Products were fresh, which took advantage of mistaken consumer beliefs, when the Products are not fresh.

71. Defendant had a duty to disclose that it did not subscribe to the tastes of typical consumers when it comes to mashed potatoes.

72. At the time of the representations, defendant knew or should have known same were false or misleading, or made them without knowledge of their truth or veracity.

73. Defendant negligently misrepresented and/or negligently omitted material facts.

74. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

75. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

### Breach of Express Warranty and Implied Warranty of Merchantability

76. Plaintiff incorporates by references all preceding paragraphs.

77. Defendant manufactures and sells refrigerated mashed potato products.

78. Defendant warranted to plaintiff and class members that the Products did not contain margarine and were fresh as a result of their claims.

79. Since it is not conceivable to have mashed potatoes with butter and margarine, no reasonable consumer would expect the Products to contain margarine.

80. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

81. As a result, the Products lacked those attributes which are present in mashed potato products which contain butter to the exclusion of margarine and which are fresh.

82. Plaintiff and class members relied on defendant's claims, paying more than they would have otherwise.

## Fraud

83. Plaintiff incorporates by references all preceding paragraphs.

84. Defendant's intent in making the "Made With Real Butter" and "Made With Fresh Whole Potatoes" claims was to take advantage of consumers' common expectations, which do not expect mashed potatoes to have butter *and* margarine and wrongly think refrigerated mashed potatoes are fresh.

85. Defendant's actions were motivated by increasing their market share amongst the many rival mashed potato companies.

86. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have otherwise, entitling them to damages.

## Unjust Enrichment

87. Plaintiff incorporates by references all preceding paragraphs.

88. Defendant obtained benefits and monies because the Products were not as

represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

    **WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant(s) to correct its/their practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

4. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated:   April 16, 2018

                                                                         Respectfully submitted,

                                                                         Levin-Epstein & Associates, P.C.
                                                                         /s/Joshua Levin-Epstein
                                                                         Joshua Levin-Epstein
                                                                         1 Penn Plaza, Suite 2527
                                                                         New York, NY 10119
                                                                         Tel: (212) 792-0046

                                                                         Sheehan & Associates, P.C.
                                                                         /s/Spencer Sheehan
                                                                         Spencer Sheehan
                                                                         891 Northern Blvd., Suite 201
                                                                         Great Neck, NY 11021
                                                                         Tel: (516) 303-0552
                                                                         spencer@spencersheehan.com

1:18-cv-02250
United States District Court
Eastern District of New York

Marilyn Reyes individually and on behalf of all others similarly situated

Plaintiff

- against -

Crystal Farms Refrigerated Distribution Company

Defendant(s)

## Complaint

Levin-Epstein & Associates, P.C.
1 Penn Plaza # 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  April 16, 2018

                                                     /s/ Joshua Levin-Epstein
                                                   Joshua Levin-Epstein