United States District Court
Eastern District of New York

1:18-cv-02250-NGG-RML

| |
|---|
| Marilyn Reyes, individually and on behalf of all others similarly situated |
| Plaintiff |
| - against - |
| Crystal Farms Refrigerated Distribution Company |

Hon. Nicholas G. Garaufis

Defendant

Plaintiff's Opposition to Defendant's Motion to Dismiss

Sheehan & Associates, P.C.
891 Northern Blvd., Suite 201
Great Neck, NY 11021
Tel: (516) 303-0552

Levin-Epstein & Associates, P.C.
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046

Counsel for Plaintiffs

<u>Table of Contents</u>

Table of Authorities ............................................................................................................. ii

Introduction ........................................................................................................................ 2

I.   Factual Background ..................................................................................................... 2

II.  Context of Butter in Mashed Potatoes Implies the Absence of Margarine ......................... 3

      A.  Consumers Do Not Expect Mashed Potatoes to have Butter and Margarine ............................................................................................. 5

      B.  Plausible for Highlighting of Butter to Mean the Absence of Margarine and GMOs ..................................................................... 5

      C.  Disclaimer of "Margarine" via Ingredient List is Insufficient ............................... 7

      D.  Consumers Reasonably Expect Foods to be Prepared in Standard Ways ............................................................................................. 8

      E.  Express and Implied Warranty Claims ................................................. 9

      F.  Fraud Demonstrated through Defendant's Use of Erroneous Consumer Beliefs ....................................................................... 10

III.  "Fresh" and "Made with Real Butter" are Voluntary Statements and Outside of the Preemptive Scope ............................................................................... 12

      A.  Plaintiff's Allegations Relating to the Term "Fresh" are not Preempted ............................................................................... 14

      B.  "Real Butter" Allegations are not Subject to Preemption .................................... 15

IV.  Procedural Points ..................................................................................................... 16

      A.  Nationwide Class Allegations are Sufficient at the Pleading stage ...................... 16

      B.  Plaintiff has Standing to seek Injunctive Relief .................................................. 17

Conclusion ........................................................................................................................ 18

## TABLE OF AUTHORITIES

### Cases

*Ackerman v. Coca–Cola Co.*,
   09–cv–395, 2013 WL 7044866
   (E.D.N.Y. July 18, 2013) ................................................................. 18

*Ackerman v. Coca-Cola Co.*,
   No. 09-cv-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) .......................................... 4, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................... 2

*Ault v. J.M. Smucker Co.*,
   No. 13-cv- 3409, 2014 WL 1998235
   (S.D.N.Y. May 15, 2014) ................................................................. 13

*Belfiore v. Procter & Gamble Co.*,
   No. 14-cv-4090, 311 F.R.D. 29,
   2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015) ................................................. 3

*Bell Atl. Co. v. Twombly*,
   550 U.S. 544 (2007) ................................................................. 2, 3

*Bowring v. Sapporo U.S.A. Inc.*,
   234 F.Supp.3d 386 (E.D.N.Y. 2017) ........................................................ 7

*Briseno v. ConAgra Foods, Inc.*,
   No. 15-cv-55727, 2017 WL 53421
   (9th Cir. Jan. 3, 2017) ................................................................. 6

*Delgado v. Ocwen Loan Servicing, LLC*,
   No. 13-cv-4427, 2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) ............................................ 7

*Eidelman v. Sun Prods. Corp.*,
   No. 16-cv-3914, 2017 WL 4277187 (S.D.N.Y. Sept. 25, 2017) ........................................... 7

*Fermin v. Pfizer Inc.*,
   215 F.Supp.3d 209 (E.D.N.Y. 2016) ........................................................ 7

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ................................................................. 3

*Foman v. Davis*,
   371 U.S. 178 (1962) ................................................................. 18

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
   8 F.Supp.3d 467 (S.D.N.Y. 2014) ........................................................ 7

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
 774 N.E.2d 1190, 98 N.Y.2d 314 (2002) ................................................ 2

*Greene v. Gerber Products Co.*,
 262 F.Supp.3d 38 (E.D.N.Y. 2017) ...................................................... 17

*Gubala v. CVS Pharmacy, Inc.*,
 No. 14-cv-09039, 2015 U.S. Dist. LEXIS 77509, 2015 WL 3777627
 (N.D. Ill. June 16, 2015) ................................................................ 13

*Henderson v. Gruma Corp.*,
 No. 10-cv-04173, 2011 U.S. Dist. LEXIS 41077, 2011 WL 1362188
 (C.D. Cal. Apr. 11, 2011) ................................................................ 5

*Hughes v. Ester C Co.*,
 930 F.Supp.2d 439 (E.D.N.Y. 2013) ...................................................... 6

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
 588 F.Supp.2d 527 (S.D.N.Y. 2008) ................................................ 12, 13

*Koehler v. Litehouse, Inc.*,
 No. 12-cv-04055, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) .......................... 18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
 797 F.3d 160 (2d Cir. 2015) ............................................................ 18

*Manchouck v. Mondeléz Int'l Inc.*,
 No. 13-cv 02148, 2013 U.S. Dist. LEXIS 138877, 2013 WL 5400285
 (N.D.Cal. Sept. 26, 2013) ................................................................ 5

*Mantikas v. Kellogg Co.*,
 No. 16-2552, 2017 U.S. Dist. LEXIS 83311, 2017 WL 2371183
 (E.D.N.Y. May 31, 2017) .............................................................. 3, 4

*Motta v. Glob. Contract Servs. Inc.*,
 No. 15-cv-8555, 2016 WL 2642229 (S.D.N.Y. May 4, 2016) .............................. 17

*NML Capital, Ltd. v. Republic of Argentina*,
 No. 05-cv-2434, 2009 WL 1528535 (S.D.N.Y. May 29, 2009) ............................. 6

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
 85 N.Y.2d 20 (1995) ...................................................................... 2

*Pardini v. Unilever United States, Inc.*,
 961 F.Supp.2d 1048 (N.D. Cal. 2013) .................................................... 13

*Peviani v. Hostess Brands, Inc.*, 750 F.Supp.2d 1111 (C.D. Cal. 2010) ....................... 13

*Plumbers & Steamfitters Local 137 Pension Fund v. American Express Co.*,
   No. 15-cv-5999, 2017 WL 4403314 (S.D.N.Y. Sept. 30, 2017)..............................................12

*Red v. Kraft Foods, Inc.*,
   No. 10-cv-1028, 2012 U.S. Dist. LEXIS 164461, 2012 WL 5504011
   (C.D. Cal. Oct.25, 2012) .......................................................................................................8

*Segedie v. Hain Celestial Grp., Inc.*,
   No. 14-cv-5029, 2015 WL 2168374 (S.D.N.Y. May 7, 2015) ................................................6

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994).................................................................................................12

*Silva v. Smucker Nat. Foods, Inc.*,
   No. 14-cv-6154, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015)............................................6

*Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*,
   250 F.3d 87 (2d Cir. 2001) ...................................................................................................9

*U.S. ex rel. Polansky v. Pfizer, Inc.*,
   No. 04-cv-0704, 2009 WL 1456582 (E.D.N.Y. May 22, 2009) ...........................................10

*Weisblum v. Prophase Labs, Inc.*,
   88 F.Supp.3d 283 (S.D.N.Y. 2015) ......................................................................................9

*Williams v. Calderoni*,
   2012 U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012), *aff'd*, *Williams v. Schwartz*, 529 F.
   App'x 89 (2d Cir. 2013)........................................................................................................3

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................................................4

*Williamson v. Apple*,
   No. 5:11-cv-00377, 2012 U.S. Dist. LEXIS 125368 (N.D. Cal. Sept. 4, 2012) ......................8

### Other Authorities

58 Fed. Reg. 3, 2066,
   Food Labeling Regulations; Implementing the Nutrition Labeling and Education Act (NLEA)
   of 1990; Opportunity for Comments (Jan. 3, 1993) (21 CFR Parts 5, 20, 100, 101, 105, and
   130)...................................................................................................................................16

58 Fed. Reg. 3, 2401,
   Terms that Describe Other Aspects of Food: "Fresh" and Related Terms
   (Jan. 3, 1993) (21 C.F.R. § 101.95).................................................................................14, 15

### Statutes

21 U.S.C. § 343(r)......................................................................................................... 15, 16

21 U.S.C. § 343-1(a)......................................................................................................... 16

GBL § 349......................................................................................................................... 2

GBL § 350......................................................................................................................... 2

**Regulations**

21 C.F.R. § 101.65............................................................................................................ 16

21 C.F.R. § 101.65(b)(3).................................................................................................. 15

21 C.F.R. § 101.95............................................................................................................ 14

## INTRODUCTION

Plaintiff submits this memorandum of law in opposition to defendant's Motion to Dismiss the First Amended Complaint ("FAC" or ECF 13), and Memorandum of Law in Support ("Def. Mem."). For the reasons below, the motion should be denied it in its entirety.

## I.   FACTUAL BACKGROUND

Defendant sells mashed potatoes which highlight the presence of butter, despite also containing margarine. The FAC alleges it is misleading to promote butter in this way given how reasonable people consume mashed potatoes and what they expect.

The representations violate New York General Business Law ("GBL") §§ 349 and 350, prohibiting "[d]eceptive acts or practices" and "[f]alse advertising." FAC, ¶¶ 97-107. The purpose of these laws is "to secure an 'honest market place' where 'trust,' and not deception, prevails." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, 98 N.Y.2d 314, 324 (2002) (citation omitted).

To state a claim pursuant to GBL §§ 349 and 350, a plaintiff must allege that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff was injured as a result. *See, e.g.*, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). Whether a particular act or practice is deceptive is intensely-factual, and, therefore, motions to dismiss are disfavored. *See, e.g.*, *Sims v. First Consumers Nat. Bank*, 303 A.D. 2d 288, 289, 758 N.Y.S. 2d 284, 285-286 (1st Dept. 2003).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim

2

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556-57; *Williams v. Calderoni*, 2012 U.S. Dist. LEXIS 28723, at *20 (S.D.N.Y. Mar. 1, 2012) (in evaluating a complaint under a Rule 12(b)(6) standard, the Court need not accept "implausible allegations or legal conclusions expressed as facts"), *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013).

## II.   CONTEXT OF BUTTER IN MASHED POTATOES IMPLIES THE ABSENCE OF MARGARINE

Defendant's authorities appear to support the notion that a truthful statement cannot be misleading.  Def. Mem. at 10 citing *Mantikas v. Kellogg Co.*, No. 16-cv-2552, 2017 U.S. Dist. LEXIS 83311, at *4-5, 2017 WL 2371183, at *4-5 (E.D.N.Y. May 31, 2017) ("The truthful highlighting of one ingredient does not reasonably imply the absence of a different ingredient, especially when all ingredients are properly disclosed in the ingredient statement" appear to adequately support its position.").

A closer look reveals nuance and context, requiring a fact-intensive analysis.  *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ( "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."); *Belfiore v. Procter & Gamble Co.*, No. 14-cv-4090, 311 F.R.D. 29, 38, 2015 WL 5781541, at *35 (E.D.N.Y. Oct. 5, 2015) (to establish a prima facie case under GBL § 349, "The entire mosaic is viewed rather than each tile separately.").

The FAC plausibly alleged that the promotion of butter in mashed potatoes is an affirmative representation of the absence of margarine due to the context, relationship between butter and

margarine and consumers' preferences.  FAC, ¶ 12 ("The conflict between butter and margarine has been greater than that of any other food products that could allege to be rivals) 15 (margarine "invented…to develop a lower quality and cheaper butter alternative"), 17 ( states "outlawed the practice of margarine manufacturers coloring their product yellow to fraudulently sell it as butter"), 19 ("Margarine producers fortified their product with Vitamin A to better imitate butter"), 7 ("When consumers eat mashed potatoes, they are typically prepared or consumed with fats and oils, like butter or margarine").

In contrast to defendant's interpretation, *Mantikas* reached its conclusion that the "MADE WITH WHOLE GRAIN" front label claim was not misleading because the <u>front label</u> also "conspicuously states that the Crackers are made with either five (5) or eight (8) grams of whole grain per serving." *Mantikas*, 2017 WL 2371183 at *10-11. ("no reasonable consumer would believe that the Crackers were *solely* composed of whole grain, as the front of the Product's box explicitly stated otherwise.") (emphasis in original).

Contrary to defendant's characterizations, the court distinguished that plaintiff's claims from leading cases where the ingredient list *was* necessary to "learn the true contents of the products." *Mantikas*, 2017 WL 2371183 at *10-11 ("the Crackers' packaging in this action neither contained any affirmative misrepresentations nor incorrectly suggested that the Crackers contained certain ingredients.") citing *Williams v. Gerber Prods Co.*, 552 F.3d 934 (9th Cir. 2008) ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.") and *Ackerman v. Coca-Cola Co.*, No. 09-cv-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ("the presence of a nutritional panel, though relevant, does not as a matter

4

of law extinguish the possibility that reasonable consumers could be misled by [a product's] labeling and marketing.").

A.   Consumers Do Not Expect Mashed Potatoes to have Butter and Margarine

In contrast to defendant's authorities, plaintiff has alleged *why* and *how* it is misleading to promote butter on the label when the products also had margarine.  FAC, ¶ 10 (that all-important decision – choosing butter or margarine), ¶ 12 ("conflict between butter and margarine has been greater than that of any other food products that could allege to be rivals – i.e., grain vs. whole grain), ¶ 45 ("To the extent reasonable consumers consume butter and margarine, this would only be done in separate foods"); *Manchouck v. Mondeléz Int'l Inc.*, No. 13-cv 02148, 2013 U.S. Dist. LEXIS 138877, at *4, 2013 WL 5400285, at *4 (N.D.Cal. Sept. 26, 2013) ("Plaintiff has not plausibly alleged *why* the [truthful] statement "made with real fruit" would not include mechanically separated fruit purée"); *Henderson v. Gruma Corp.*, No. 10-cv-04173, 2011 U.S. Dist. LEXIS 41077, 2011 WL 1362188, at * 17 (C.D. Cal. Apr. 11, 2011) ("Plaintiffs do not provide a specific argument as to *how* this statement [made with garden vegetables] is misleading.") (emphasis added to highlight basis of dismissal).

B.   Plausible for Highlighting of Butter to Mean the Absence of Margarine and GMOs

In directing the Court only to the "made with" case law, defendant claims it is implausible for to expect "made with real butter" to also mean the absence of margarine and GMOs. Def. Mem. at 2.  While manufacturers may be reluctant to use the term "natural", other terms (i.e., butter) are substituted which evoke the same positive reactions and beliefs, yet are not fraught with as much debate and scrutiny.  Consumers make the same connections between the proxy term of butter and "natural," and the positive attributes that come along with that term.

Defendant argues it is implausible to go from "butter" to "no margarine" and "no GMOs." However, courts often conclude that one statement corresponds with or implies an additional, unstated fact. *Briseno v. ConAgra Foods, Inc.*, No. 15-cv-55727, 2017 WL 53421 (9th Cir. Jan. 3, 2017) (rejecting defendant's claim that a reasonable consumer would not consider the "100% Natural" label material and understand it to mean GMO-free"); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029, 2015 WL 2168374, at *14 (S.D.N.Y. May 7, 2015) ("It is not unreasonable as a matter of law to expect that a product labeled "natural" or "all natural" contains only natural ingredients."); *Hughes v. Ester C Co.*, 930 F.Supp.2d 439,459 (E.D.N.Y. 2013) ("[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); see also *Silva v. Smucker Nat. Foods, Inc.*, No. 14-cv-6154, 2015 WL 5360022, at *10, n.5 (E.D.N.Y. Sept. 14, 2015) ("An FDA-mandated ingredients list on the back of the label does not inoculate a manufacturer from claims that they misrepresented the product on the front of the label; consumers are not expected to scour a label to ensure that prominent representations are not false.").

In addition to the interconnected history of butter and margarine along with the opinions of leading food analysts, the FAC cited to scientific studies which "confirmed these strong sentiments, noting that "consumers appeared to fall primarily into two groups: butter-only consumers, and margarine + butter consumers," because margarine loyalists "often used butter for special occasions or for baking." ¶ 59. Defendant has failed to address or rebut the conclusions of these studies, such that the only possible conclusion is that they correctly confirm the FAC's allegations about consumer preferences. *NML Capital, Ltd. v. Republic of Argentina*, No. 05-cv-2434, 2009 WL 1528535, at *1 (S.D.N.Y. May 29, 2009) (holding that defendant waived the argument by failing to raise it in its opposition to the plaintiffs' motion).

C.    Disclaimer of "Margarine" via Ingredient List is Insufficient

The authorities within this Circuit hold that "the presence of a disclaimer or other clarifying language *may* defeat a claim of deception." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F.Supp.3d 467, 479-80 (S.D.N.Y. 2014) (emphasis in original); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-cv-4427, 2014 WL 4773991, at *18 (E.D.N.Y. Sept. 24, 2014) (considering font size, placement, emphasis and consistency when evaluating whether a disclaimer is sufficient to prevent a reasonable consumer from being misled).

Moreover, the FAC alleges that because no reasonable consumer would expect butter and margarine in mashed potatoes, it would not even be plausible for them to "double check" the ingredient list to confirm defendant has not misled them.

Given the allegations relating to the context of the butter-margarine divide, defendant's disclaimer in the solitary word, "margarine" in miniscule font on the back of the label, is grossly inadequate. *Fermin v. Pfizer Inc.*, 215 F.Supp.3d 209, 212 (E.D.N.Y. 2016) (total pill-count was "clearly stated" on the front of the package, making it "impossible to view the products without also reading the total number of pills contained in each package."); *Bowring v. Sapporo U.S.A. Inc.*, 234 F.Supp.3d 386, 292 (E.D.N.Y. 2017) (defendant's "standalone statement" which clearly and accurately disclosed where the beer was brewed, no reasonable consumer would be misled); *Eidelman v. Sun Prods. Corp.*, No. 16-cv-3914, 2017 WL 4277187 (S.D.N.Y. Sept. 25, 2017) (rejecting defendant's argument that "no reasonable consumer could be misled into believing that the Label indicates that both the brand, and in turn, the brand product bearing the actual Label, are recommended by dermatologists for sensitive skin" even "assuming the entire text of the Label is fully visible and easily read").

D.    Consumers Reasonably Expect Foods to be Prepared in Standard Ways

Plaintiff's claims – no expectation of margarine in mashed potatoes which promote butter – do not "disregard a 'well-known fact[s] of life'" – and instead, are wholly consistent with everyday reality and customs. *Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 U.S. Dist. LEXIS 164461, at *3, 2012 WL 5504011, at *3 (C.D. Cal. Oct.25, 2012) ("a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables" and thus no support for plaintiffs' claims that the representations suggested the crackers were healthy) citing *Williamson v. Apple*, No. 5:11-cv-00377, 2012 U.S. Dist. LEXIS 125368, at *17-19 (N.D. Cal. Sept. 4, 2012) ("the representations taken as a whole would not lead the 'reasonable consumer' to believe that the glass housing on the iPhone 4 was indestructible or drop-proof because ... it is a well-known fact of life that glass can break under impact, even glass that has been reinforced. This much is known to the ordinary, reasonable consumer.").

According to defendant, the allegations "about home cooking practices and Internet recipes ignore the context of a consumer purchasing a ready-to-eat mashed potato product, and provide no information relevant to a reasonable consumer acting reasonably under those circumstances." Def. Mem. at 12.

The FAC alleged that consumers are reasonable to "expect food manufacturers to make products in a way that is familiar and appealing to them, based upon their typical experiences making foods at home and ingredient preferences and they have responded, reformulating products to match this demand." ¶ 52.

This claim was supported by the food industry trade magazine Natural Products Insider, that "described what consumers expect when purchasing a product like the mashed potatoes of defendant – "[A] ready-made dish that requires simple heating takes the pressure off a busy

8

weeknight, but for an increasing number of consumers, it also must have a homemade character." FAC, ¶¶ 53- 55 (what consumers "would make at home" and "matching consumer preferences.").

     E.    <u>Express and Implied Warranty Claims</u>

The warranty claims are based upon the representation "Made with Real Butter," which affirmed to reasonable consumers they (i) contained butter and (ii) did not contain margarine, since it is implausible to mix these two ingredients when having mashed potatoes.  FAC, ¶ 57.

To the extent defendant's argument is that "made with real butter" constitutes "mere labeling on a package," such a conclusion would be contrary to New York law, in which "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty."  *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *49 (affirming that defendant's labels constituted an express warranty under N.Y.U.C.C. Law § 2-313(1)(a)).

In an attempt at dismissing the implied warranty claims, defendant cites to a lack of privity between the parties and lack of personal injury. Def. Mem. at 18 citing *Weisblum v. Prophase Labs, Inc.*, 88 F.Supp.3d 283, 296 (S.D.N.Y. 2015)

However, this overlooks that a privity-like relationship can be established where one party "hold[s] unique or special expertise," sufficient to make the speaker aware that the other party would rely on the information provided to them. *Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001)

Here, defendant's experience and leadership in the potato processing and dairy industries, the products' name ("Diner's Choice" – implying that consumers *choose* what they want with mashed potatoes instead of taking everything) along with the numerous statements promoting the value-added dairy products, establishes that the equivalent of a privity relationship exists.

F.       Fraud Demonstrated through Defendant's Use of Erroneous Consumer Beliefs

Plaintiff satisfied the requirements of Fed. R. Civ. P. 8(a), and the heightened requirements

of Fed. R. Civ. P. 9(b) by adequately pleading the "who, what, when, where, and how of the alleged

fraud, noted in the below table. *U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04-cv-0704, 2009 WL

1456582, at *4 (E.D.N.Y. May 22, 2009).

| Pleading | FAC Allegations | Paragraph |
|---|---|---|
| Who: | "Crystal Farms Refrigerated Distribution Company distributes, markets, labels and sells refrigerated ready-to-eat mashed potatoes under the 'Diner's Choice' brand." | 1 |
| | Defendant "is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota." | 99 |
| What: | "the Products use the term 'fresh' in a manner which causes consumers to be misled, because defendant knows over 80% of consumers erroneously believe refrigerated mashed potatoes are fresh." | 72 |
| When: | "any Products with actionable representations during the statutes of limitation" | 88 |
| Where: | "The front labels [representations] include… 'Made With Fresh Whole Potatoes,' also contained on the side flaps of the Products." | 4 |
| How: | "This mistaken belief is known to defendant because of proprietary research conducted by one of its affiliated entities which manufactures and sells similar products." | 73 |

The FAC states that the statements that the Products are "made with" and "made from"

"fresh potatoes" constitute fraud because defendant knows that "83% of consumers believe

refrigerated potatoes are fresh," despite the Products being highly processed and laden with

chemical preservatives.  FAC, ¶¶ 72-73.

10

Defendant is aware of this fact due to the proprietary research cited in the FAC by its parent company, Michael Foods Group, Inc. ("MFG").[1]

The document in question "2014 Simply Potatoes Digital Brochure," was created by Michael Foods, Inc., one of the companies, including defendant, which comprise MFG.[2] See Exhibit "A."

Michael Foods, Inc. and defendant Crystal Farms produce and distribute the Simply Potatoes and Diner's Choice line of refrigerated mashed potatoes.  Michael Foods, Inc. and Crystal Farms share the same offices and plants, executives and other indicia of commonality, such that the use of exclusive knowledge obtained by one entity would be shared with the others.

The materials were directed *not* to consumers, but to food service providers, and stated: "fresh matters.  93% of consumers rate freshness of food as important to selecting a restaurant.* 83% of consumers *believe* refrigerated potatoes *are fresh*.*" (emphasis added).  These erroneous beliefs exist despite the extended shelf-life of refrigerated mashed potatoes due to use of artificial preservatives.

The percentage of consumers who have this erroneous belief was obtained from an exclusive survey performed by Datassential, one of the most sophisticated data mining and food industry research outfits in the country, in February 2014.

The result is what defendant intended – consumers believe the mashed potatoes are "fresh," as in "just prepared." This document shows defendant was well-informed that the consuming public mistakenly *believes* refrigerated potato products to be "fresh," understood as not subjected

---

[1] Company Overview of Michael Foods Group, Inc.,
bloomberg.com/research/stocks/private/snapshot.asp?privcapId=4216565, accessed on November 28, 2018.
[2] Post Holdings to Acquire Michael Foods for $2.45 Billion, April 17, 2014,
postholdings.com/newsroom/post-holdings-to-acquire-michael-foods-for-2-45-billion/, accessed on November 28, 2018.

to a processing or preservation step after it first became consumable.  Yet despite this knowledge, defendant heavily relies upon the term "Fresh" ("Made from Fresh Potatoes"), never going so far as to deem the Products "fresh," but far enough so that consumers will persist in believing something which is not true.  FAC, ¶¶ 44-47.

Defendant's intent is evinced by its opportunity to commit fraud and their "conscious misbehavior or recklessness," in furthering the mistaken beliefs of its customers.  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *Plumbers & Steamfitters Local 137 Pension Fund v. American Express Co.*, No. 15-cv-5999, 2017 WL 4403314, at *4 (S.D.N.Y. Sept. 30, 2017) ("Where the alleged conduct is an omission, "conscious recklessness" means defendants must have "acted with at least a reckless disregard of a known or obvious duty to disclose.").

The FAC has met the "specificity requirement for scienter" imposed by Fed. R. Civ. P. 9(b) since plaintiffs have not only "averred generally" as to defendant's knowledge.  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

## III.   "FRESH" AND "MADE WITH REAL BUTTER" ARE VOLUNTARY STATEMENTS AND OUTSIDE OF THE PREEMPTIVE SCOPE

Defendant advances the equivalent of a "get out of jail free card" in claiming that regardless of whether the use of "butter" and "fresh" are misleading, plaintiff's interpretation would prohibit conduct specifically permitted by federal law." Def. Mem. at 4, 8, quoting *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F.Supp.2d 527, 530, 538 (S.D.N.Y. 2008) (implied preemption is "applicable where compliance with both federal and state regulations is a physical impossibility").

Defendant's authorities all relate to requirements imposed by law and such are inapposite to the allegations against misleading usage of "fresh" and "made with real butter."  Def Mem. at 8 citing *Ackerman*, 2010 WL 2925955, at *19, 29 (finding that plaintiff's claim that that the

12

fortification of sugar water – rather than the sugar content itself was barred by preemption); *In re Pepsico, Inc. Bottled Water Mktg.*, 588 F. Supp. 2d. at 537 (recognizing "that in contrast to spring water, the FDA concluded that because purified water, from whatever source, has been treated to meet purity standards, its source is immaterial to reasonable consumers."); *Pardini v. Unilever United States, Inc.*, 961 F.Supp.2d 1048, 1054-1056 (N.D. Cal. 2013) (where defendant's calculated serving sizes were consistent with FDA regulations, plaintiff's claims that the products were "fat free" and "zero calorie" were misleading were preempted since these were based on the FDA-mandated serving size"); *Peviani v. Hostess Brands, Inc.*, 750 F.Supp.2d 1111, 1119 (C.D. Cal. 2010) (display of nutritional information in the manner specified by the FDA cannot be challenged as "misleading" because a plaintiff may not "enjoin the use of the very term permitted by the NLEA and its accompanying regulations"); *Gubala v. CVS Pharmacy, Inc.*, No. 14-cv-09039, 2015 U.S. Dist. LEXIS 77509, at *10-11, 2015 WL 3777627, at *10-11 (N.D. Ill. June 16, 2015) (plaintiff's allegations were preempted where they would require CVS to modify the mandated Nutrition Facts to identify each source of protein when doing so "would not be identical to the labeling requirements imposed by federal law.") (emphases added).

The FAC did not allege defendant could not use the terms "made with real butter" or "fresh" on its labels, only that its particular usage was misleading. *Ault v. J.M. Smucker Co.*, No. 13-cv- 3409, 2014 WL 1998235, at *7 (S.D.N.Y. May 15, 2014) (rejecting defendant's attempt to characterize plaintiff's claim as requiring it to label its products "bioengineered" when the allegations were based on the claim "All Natural," which had "no effect on Defendant's ingredient labeling and therefore cannot conflict with FDA labeling requirements. As a result, "[t]his is not a preempted theory.""").

13

A.   Plaintiff's Allegations Relating to the Term "Fresh" are not Preempted

Unlike the requirements dealing with nutritional information and nutrient content, the NLEA did not require the FDA to "define labeling terms such as 'fresh' that do not make nutrient content claims." 58 Fed. Reg. 3, 2401 at 2401, Terms that Describe Other Aspects of Food: "Fresh" and Related Terms (Jan. 3, 1993) (21 C.F.R. § 101.95); 21 U.S.C. § 343-1(a). Therefore, "fresh" falls outside of those sections designated for preemption by Congress.

Nevertheless, regulations exist as parameters for the use of "fresh" on food labels. Def. Mem. at 8 quoting 21 C.F.R. § 101.95 ("[t]he term 'fresh,' when used on the label or in labeling of a food in a manner that suggests or implies that the food is unprocessed, means that the food is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation").

Defendant's argument is simplistic and incorrect. Mem. at 12 ("There is no such thing as "fresh mashed potatoes" (absurdly referenced at Dkt. 13 ¶ 75) because potatoes have to be cooked before they can be mashed. Mashed potatoes are cooked vegetables, and therefore cannot be fresh vegetables.").

By this argument, there could be no such thing as "fresh juice," since fruits have to be squeezed before the juice is released or fresh pasta sauce. 58 Fed. Reg. 3, 2401 at 2403 ("expressed juices from raw produce could bear the term 'fresh'" but if the term were used to describe pasteurized juice, it would be misbranded); 21 C.F.R. § 101.95 ("the term "fresh" to describe pasta sauce that has been pasteurized or that contains pasteurized ingredients would be subject to paragraph (a) of this section because the term implies that the food is not processed or preserved.").

For juice, pasta sauce, bread, milk and countless other foods, "fresh" is applicable "where there are processed and unprocessed forms of the food available." 58 Fed. Reg. 3, 2401 at 2402. "Unprocessed" in this sense means a form of the food that has not been subjected to a form of

14

preservation, such that "fresh" is not restricted to describing only raw agricultural commodities. *Id.* ("However, the agency does not agree that the use of the term "fresh" is appropriate if a food has been subjected to chemical treatments, including but not limited to antioxidants, antimicrobial agents, or preservatives, that introduce chemically active substances that remain in or on the food to preserve or otherwise affect the food."). In other words, "fresh" exists on a continuum because it relates to when the food was first in existence (i.e., juice expressed from raw produce).

"Fresh" refrigerated mashed potatoes exist, sold in grocery stores which sell the defendant's Products, in close proximity. Store-made and sold mashed potatoes have a limited shelf-life and are "fresh" because they lack chemical preservatives, including sodium benzoate, disodium pyrophosphate, potassium sorbate and sodium bisulfite." FAC, ¶ 76; 58 Fed. Reg. 3, 2401 at 2403 ("However, the agency does not agree that the use of the term "fresh" is appropriate if a food has been subjected to chemical treatments, including but not limited to antioxidants, antimicrobial agents, or preservatives").

   B.   <u>"Real Butter" Allegations are not Subject to Preemption</u>

Defendant's argument with respect to the claims, "made with real butter" misinterprets the relationship between the relevant statutes and regulations as it relates to preemption. Def. Mem. at 5 ("However, the statement "made with real butter" complies with Section 343(r) of the FDCA and regulations promulgated by FDA concerning express and implied nutrient content claims of the type described in Plaintiff's claims.").

Defendant accurately states that ""made with real butter" on food labels is not an implied nutrient content claim." Def. Mem. at 6; 21 C.F.R. § 101.65(b)(3) ("A claim about the presence of an ingredient that is perceived to add value to the product, e.g., 'made with real butter'"); 58 Fed. Reg. 3, 2066 at 2369, Food Labeling Regulations; Implementing the Nutrition Labeling and

Education Act (NLEA) of 1990; Opportunity for Comments (Jan. 3, 1993) (21 CFR Parts 5, 20, 100, 101, 105, and 130)("in new § 101.65(b)(3) the agency is listing claims about the presence of an ingredient that is perceived to add value to the product, such as 'made with butter,' 'made with whole fruit,' or 'contains honey,' as statements that are not nutrient content claims.").

Since "made with real butter" is admittedly not an implied nutrient content claim, it cannot be alleged to comply with the regulations for nutrient content claims.  21 U.S.C. § 343(r); 21 U.S.C. § 343-1(a) (preemption provision of NLEA).

The FAC did not allege the Products were misrepresented because they lacked certain nutrients or vitamins.  Instead, plaintiff and reasonable consumers come away with the false impression that the Products lack margarine.  FAC, ¶ 40 (describing consumers' appreciation for butter was due to "realization of the goodness of simple, less processed foods" as opposed to margarine), ¶ 41 ("More significant than any difference between butter and margarine over the exact amount of micronutrients or grams of certain components is the desire of plaintiff and consumers to eschew artificial and synthetic foods in favor of natural and simpler ones – butter vis-à-vis margarine.").

Defendant's puzzling and unsupported position it that just because a regulation, 21 C.F.R. § 101.65, contains examples of certain statements that are specifically <u>excluded</u> from those meant to be covered by that regulation, the excluded statements are still entitled to preemption. 21 U.S.C. § 343(r).

## IV.   PROCEDURAL POINTS

### A.   <u>Nationwide Class Allegations are Sufficient at the Pleading stage</u>

Defendant's argument with respect to the nationwide class are conclusory, overbroad and premature.  First, defendant's authorities do not stand for the proposition that a court *must* or even

16

should decide issues relating to maintenance of a nationwide class at the pleading stage. *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *57 ("courts have recognized that this question is <u>usually</u> addressed on a class certification motion") (emphasis added). More recent authorities have emphasized the pattern within the Second Circuit, where there are "common issues of conduct that would establish liability under a number of states' laws, it is possible for those common issues to predominate and for class certification to be an appropriate mechanism for handling the dispute." *Greene v. Gerber Products Co.*, 262 F.Supp.3d 38, 80 (E.D.N.Y. 2017).

Though defendant asserts the respective consumer protection laws of New York and Florida are not applicable to purchasers outside of those states, it provides no authority as to any differences between the consumer protection laws of other states with these two. *Greene*, 262 F.Supp.3d 38, at 80 ("To the extent that the laws of various states differ, those concerns may be "lessened where the states' laws do not vary materially."").

The question is not whether the named plaintiffs actually satisfy predominance, but whether Defendant has demonstrated that it will be impossible—after full discovery—for Plaintiffs to satisfy Rule 23. *Motta v. Glob. Contract Servs. Inc.*, No. 15-cv-8555, 2016 WL 2642229, at *5 (S.D.N.Y. May 4, 2016)

Plaintiff identified a number of common questions that can be satisfied with common evidence, including whether defendant's labeling is misleading and whether these claims allowed defendant to sell the Products at a premium (see, e.g., FAC ¶ 110).  Class certification is therefore possible and Defendant has failed to meet its burden.

    B.   <u>Plaintiff has Standing to seek Injunctive Relief</u>

Plaintiffs and reasonable consumers seek to be relieved from Defendant's continuing misleading and deceptive practices in the future, which is no more truthful today than when

plaintiff first discovered the alleged deception. *Ackerman v. Coca–Cola Co.*, 09–cv–395, 2013 WL 7044866, at *15 n. 23 (E.D.N.Y. July 18, 2013); *see also*, *e.g.*, *Koehler v. Litehouse, Inc.*, No. 12-cv-04055, 2012 WL 6217635, at *6–7 (N.D. Cal. Dec. 13, 2012) (plaintiff had standing for injunctive relief claim even though he did not intend to purchase the product as advertised).

**CONCLUSION**

Though "a party may amend its pleading only with the opposing party's written consent or the court's leave" after the expiration of time for amendment as a matter of course, the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[T]he 'permissive standard' of Rule 15 'is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). Plaintiffs have not had an opportunity to amend their pleading in response to a Court order evaluating the sufficiency of his allegations. As the Second Circuit observed, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley*, 797 F.3d at 190.

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety or in the alternative, grant leave to amend or dismiss without prejudice.

Dated:    December 4, 2018

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
891 Northern Blvd., Suite 201
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

Levin-Epstein & Associates, P.C.

Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
(212) 792-0046
joshua@levinepstein.com

1:18-cv-02250-NGG-RML
United States District Court
Eastern District of New York

Marilyn Reyes, individually and on behalf of all others similarly situated,

        Plaintiff,

   - against -

Crystal Farms Refrigerated Distribution Company

        Defendant

Plaintiff's Opposition to Defendant's Motion to Dismiss

Sheehan & Associates, P.C.
891 Northern Blvd., Suite 201
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  December 4, 2018

                   /s/ Spencer Sheehan
                  Spencer Sheehan