$D/\Gamma$

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARILYN REYES, individually and on behalf of all
others similarly situated,

                      Plaintiff,

       -against-

CRYSTAL FARMS REFRIGERATED DISTRIBUTION
COMPANY,

                    Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**18-CV-2250 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

       Plaintiff Marilyn Reyes brings this putative class action against Defendant Crystal Farms

Refrigerated Distribution Company.  Plaintiff alleges that Defendant's representations were

false, deceptive, and misleading, violating New York General Business Law ("NY GBL") §§349

and 350.  (Am. Compl. (Dkt. 13).)  Plaintiff also brings claims of negligent misrepresentation,

breach of express and implied warranty of merchantability, fraud, and unjust enrichment.  (Id.)

       Before the court is Defendant's motion to dismiss for failure to state a claim, pursuant to

Fed. R. Civ. P. 12(b)(6), or, in the alternative, to strike Plaintiff's nationwide class allegations,

pursuant to Fed. R. Civ. P. 12(f).  (See Def. Mot. to Dismiss ("Mot.") (Dkt. 14).)  For the

following reasons, Defendant's motion to dismiss is GRANTED in full.

## I.     BACKGROUND

       The court takes the following statement of facts largely from Plaintiff's complaint, the

well-pleaded allegations of which the court generally accepts as true for purposes of Defendant's

motion to dismiss.  N.Y. Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 86 (2d Cir. 2017).

1

## A. Factual Allegations

Defendant, a Minnesota-based corporation, distributes, markets, labels, and sells refrigerated ready-to-eat mashed potatoes under the "Diner's Choice" brand. (Am. Compl. ¶ 1, 99.) The front label of the packages includes an image of mashed potatoes, a graphic distinguishing the various types of mashed potatoes sold by Defendant,[1] an image of butter, the words "made with real butter" in a golden seal, and the words "made with fresh whole potatoes":





(Id. ¶ 4.) The ingredient list on the back of the packages indicates that the mashed potatoes also contain margarine. (Id. ¶ 5.) Margarine is listed as the fourth ingredient, following potatoes, whole milk, and butter. (Id.) Under the ingredients list is the following statement in bold: "Partially produced with genetic engineering (margarine)":

---

[1] Defendant's mashed potatoes are available in the following varieties: traditional, garlic, country-style, and sweet. (Am. Compl. ¶ 2.)

2



**INGREDIENTS:** POTATOES, WHOLE MILK, BUTTER (CREAM, SALT), MARGARINE (LIQUID AND HYDROGENATED SOYBEAN OIL, WATER, SALT, CONTAINS LESS THAN 2% OF WHEY SOLIDS, VEGETABLE MONO & DIGLYCERIDES, SOY LECITHIN, SODIUM BENZOATE (PRESERVATIVE), SALT, CONTAINS 1% OR LESS OF THE FOLLOWING: DISODIUM PYROPHOSPHATE (ADDED TO MAINTAIN COLOR), GARLIC, POTASSIUM SORBATE AND SODIUM BISULFITE (ADDED TO MAINTAIN FRESHNESS).
**PARTIALLY PRODUCED WITH GENETIC ENGINEERING (MARGARINE)**

(Id.) Plaintiff alleges that the products—in addition to containing margarine—are not "fresh" because they contain artificial preservatives enabling them to have a three-month shelf life, whereas fresh mashed potatoes have a seven-to-ten day shelf life. (Id. ¶¶ 75-76.) In 2017 or 2018, Plaintiff paid $3.99 per product for Defendant's mashed potatoes—"a premium price compared to other similar products"—in reliance on Defendant's misleading representations. (Id. ¶¶ 82, 100-01.)

### B. Procedural History

Plaintiff filed this suit on April 4, 2018 (Compl. (Dkt. 1)) and filed an amended complaint on October 19, 2018, bringing five claims (Am. Compl.).

First, Plaintiff claims that Defendant's representations were false, deceptive, and misleading, violating NY GBL §§349 and 350, because Plaintiff believed, based on Defendant's representations, that the mashed potatoes did not contain margarine and were fresh. (Id. ¶¶ 102-07.)

Second, Plaintiff brings a claim for negligent misrepresentation, alleging that Defendant misrepresented the composition of its mashed potatoes by (1) highlighting that they contain butter, giving consumers the impression that the product did not contain margarine, and (2) implying the mashed potatoes were fresh. (Id. ¶ 109.) According to Plaintiff, Defendant had a duty to not deceptively describe the mashed potatoes, based in part on Defendant's position as a

3

trusted brand. (Id. ¶¶ 110-13.) Further, Defendant allegedly knew (or should have known) that its advertising was false or misleading. (Id.) Plaintiff claims that these alleged misrepresentations induced it to purchase the mashed potatoes, and that Plaintiff's reliance on the misrepresentations was reasonable and justifiable. (Id. ¶ 115.)

Third, Plaintiff claims that Defendant breached an express warranty and an implied warranty of merchantability. (Id. ¶¶ 117-23.) In Plaintiff's view, Defendant warranted to Plaintiff that the mashed potatoes did not contain margarine and were fresh. (Id. ¶ 119.) Per Plaintiff, "[s]ince it is not conceivable to have mashed potatoes with butter and margarine, no reasonable consumer would expect the [mashed potatoes] to contain margarine." (Id. ¶ 120.) Plaintiff avers that she relied on Defendant's claims in paying more for the mashed potatoes than she would have otherwise. (Id. ¶ 123.)

Fourth, Plaintiff brings a fraud claim, alleging that Defendant's intent in advertising that its mashed potatoes were made with real butter and fresh whole potatoes was to prey on consumers' expectations. (Id. ¶ 125.) Defendant was allegedly motivated by a desire to increase its market share in the mashed potatoes industry. (Id. ¶ 126.)

Finally, Plaintiff contends that Defendant was unjustly enriched by its actions, to the detriment of Plaintiff and the putative class members. (Id. ¶¶ 128-29.) Plaintiff seeks restitution and disgorgement of Defendant's inequitably obtained profits. (Id. ¶ 129.)

Defendant now moves to dismiss the amended complaint in its entirety. (Mot.) Defendant maintains that: (1) Plaintiff has failed to state a claim; (2) even if she had, her claims (all of which are rooted in state law) are expressly preempted by the Food, Drug, and Cosmetic Act ("FDCA"); and (3) in any event, her purported nationwide class allegations should be dismissed because her false advertising claims under New York state law cannot apply to

transactions occurring outside of New York.  (Def. Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. 14-1).)

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the Amended Complaint must present sufficient facts that, when accepted as true, "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Accordingly, for the purposes of deciding Defendants' motion, the court "accept[s] all factual allegations in the [c]omplaint as true" and will "draw all reasonable inferences in [Plaintiff's] favor."  L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429 (2d Cir. 2011) (citation and internal quotation marks omitted).  The court is not, however, required to accept as true allegations that amount to "legal conclusions couched as a factual allegation" or "naked assertion[s] devoid of further factual enhancement."  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  A complaint falls short of this standard when its well-pleaded factual allegations are "merely consistent with" or suggest the "possibility" that a defendant is liable.  Id. (internal citation and quotation marks omitted).  A plaintiff must therefore plead sufficient factual content to "nudge[]" their claim "across the line from conceivable to plausible."  Id. at 680 (quoting Twombly, 550 U.S. at 570).

## III.    DISCUSSION

For the following reasons, the court finds that Plaintiff has failed to state a claim with respect to any of her five causes of action.[2]

### A.    New York General Business Law §§ 349 and 350

#### 1.    Legal Standard

New York General Business Law §§ 349 and 350 prohibit any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," and "false advertising," which means advertising that is "misleading in a material respect." N.Y. Gen. Bus. Law §§ 349, 350, 350-a. "To assert a claim under either section, a plaintiff must establish that the defendant engaged in consumer oriented conduct that is materially misleading, and plaintiff was injured as a result of the deceptive act or practice." Bowring v. Sapporo U.S.A., Inc., 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017) (citation omitted). "To prove conduct was materially misleading, a plaintiff must demonstrate that it would mislead 'a reasonable consumer acting reasonably under the circumstances.'" Id. (quoting Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015)). "This reasonable consumer inquiry is factual and in most instances, not resolved at the motion to dismiss stage. However, a court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer." Id. (citing Fink v. Time Warner Cable, 714 F.3d 739, 742 (2d Cir. 2013)).

"[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." Fink, 714 F.3d at 742. "For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of

---

[2] The court does not reach Defendant's arguments that Plaintiff's claims are expressly preempted by the FDCA or that her purported nationwide class allegations should be struck because her false advertising claims under New York state law cannot apply to transactions occurring outside of New York. (See Mem. at 4-8, 19-20.)

deception." Id. (citations omitted). "If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim." Davis v. Hain Celestial Grp., Inc., 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018) (citation omitted). "This is because reasonable consumers understand that, with vague product descriptions, the devil is in the details." Id. (citation and quotation marks omitted). "In evaluating the efficacy of such a disclaimer, courts consider factors such as the font size, placement, and emphasis." Bowring, 234 F. Supp. 3d at 390 (citing Delgado v. Ocwen Loan Servicing, LLC., No. 13-CV-4427 (NGG), 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014)).

    2.    Application

Plaintiff accuses Defendant of violating NY GBL §§ 349 and 350 because its packaging represents that its mashed potatoes are "made with real butter" and "made with fresh whole potatoes." (Am. Compl. ¶¶ 102-07.) This claim fails.

    a.    *"Made with Real Butter"*

The statement "made with real butter" does not violate NY GBL §§ 349 and 350 because it is not misleading. Defendant's mashed potatoes contain butter. (Am. Compl. ¶ 5.) To the extent that including a label on a mashed-potatoes package indicating that the product is "made with real butter" may create confusion as to whether the mashed potatoes also contain margarine, such confusion is sufficiently dispelled by the ingredients label on the back of the package, which states twice—and once in bold font set apart from the rest of the items listed in the ingredients label—that the product contains margarine (Am. Compl. ¶ 5). See Fink, 714 F.3d at 742 ("For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." (citation omitted)); Davis, 297 F. Supp. 3d

at 334 ("If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim." (citation omitted)). These statements that the mashed potatoes contain margarine are clearly visible. (See Am. Compl. ¶ 5 (including a picture of the label).) A reasonable consumer who was concerned about whether the mashed potatoes contained margarine would know that "the devil is in the details" and thus would check the ingredients label. Davis, 297 F. Supp. 3d at 334. Additionally, Plaintiff does not allege that the mashed potatoes contain more margarine than butter. In fact, butter precedes margarine on the ingredients list on the back of Defendant's mashed-potatoes packaging (Am. Compl. ¶ 5), suggesting that the mashed potatoes contain more butter than margarine. See 21 C.F.R. § 101.4 (generally requiring ingredients to be listed "in descending order of predominance by weight").

A recent case in this district, Davis v. Hain Celestial Grp., Inc., is analogous. There, the defendant advertised that its juice was "cold-pressed," "fresh," "raw," "never heated," and "never . . . cooked." Id. at 335. The plaintiff argued that these advertising labels created the impression that the juice had not been processed after being cold pressed, when in fact it had undergone processing in the form of "high pressure pascalization." Id. at 334. The court in that case granted the defendant's motion to dismiss because (1) its juice was indeed cold-pressed, although there were subsequent steps in the juice's production process; (2) a reasonable consumer would understand "raw" to mean "uncooked" or "unheated," which the juice was; (3) the juice packaging prominently displayed a label indicating that defendant "uses pressure instead of heat to keep our beverages raw and safe"; and (4) a reasonable consumer would understand "fresh" to be referring to the defendant's general attitude towards juice-making, as

was clearly explained by the text immediately following that term on the label. Id. Like the defendant's representations about its juice in Davis, Defendant's representation that its mashed potatoes were "made with real butter" is truthful, and other labels on Defendant's packaging dispelled any confusion about whether the mashed potatoes contained margarine.

Additionally, a recent Second Circuit decision, Mantikas v. Kellogg Co., 910 F.3d 633 (2d Cir. 2018), is not inconsistent with this court's decision here. In Mantikas, the Second Circuit found it plausible that Kellogg's representation that its Cheez-It Crackers were "made with whole grain" could be misleading because the Cheez-Its contained more enriched white flour than whole wheat flour. 910 F.3d at 634-39. This case is distinguishable because Plaintiff does not allege that Defendant's mashed potatoes contained more margarine than butter.

>           b.      *"Made with Fresh Whole Potatoes"*

Defendant's representation that its mashed potatoes are "made with fresh whole potatoes" does not violate NY GBL §§ 349 and 350 either, for two reasons. First, Plaintiff does not allege that this statement is untruthful—i.e, that Defendant does not incorporate raw, unfrozen potatoes into its product. Second, in the court's view, Plaintiff's allegation is implausible. "Made with fresh whole potatoes" does not suggest that the mashed potatoes are themselves "fresh." According to the Food and Drug Administration, "fresh" means generally that a food "is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation." 21 C.F.R. 101.95(a). In other words, "fresh" means unfrozen and uncooked. As Defendant notes (Mem. at 13) and Plaintiff does not dispute, mashed potatoes cannot be "fresh" because potatoes must be cooked before they are mashed. Contrary to Plaintiff's suggestion (Am. Compl. ¶¶ 75-76), the court does not believe a reasonable consumer would be misled into believing that Defendant's mashed potatoes lacked artificial preservatives.

The court therefore dismisses Plaintiff's NY GBL §§ 349 and 350 claims.

## B. Fraud and Negligent Misrepresentation

Plaintiff also brings fraud and negligent-misrepresentation claims based on Defendant's statements that its mashed potatoes are "made with real butter" and "made with fresh whole potatoes." (Am. Compl. ¶¶ 102-07.) The court addresses these claims together because they have overlapping elements. See, e.g., Bowring, 234 F. Supp. 3d at 392 (addressing fraud and negligent-misrepresentation claims together).

"To state a claim for fraud under New York law, a plaintiff must allege '(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false.'" Id. (quoting Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 402 (2d Cir. 2015)). "Similarly, to allege a negligent misrepresentation claim, a complaint must establish that '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect.'" Id. (quoting Hydro Inv'rs, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000)).

As explained above, Plaintiff has not alleged that either of the representations at issue were false. Thus, the court dismisses her fraud and negligent-misrepresentation claims.

## C. Breach of Express Warranty and Implied Warranty of Merchantability

### 1. Express Warranty

"To prevail on a claim of breach of express warranty, a plaintiff must show 'an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon.'" Viania v. Zimmer, Inc., No. 17-CV-1641 (ADS), 2017 WL 5714725, at *2 (E.D.N.Y. Nov. 27, 2017) (quoting Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC, 382 F. App'x 110, 111-12 (2d Cir. 2010)).

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods

and becomes part of the basis of the bargain creates an express warranty that the goods shall

conform to the affirmation or promise." N.Y. U.C.C. § 2-313(1)(a). Moreover, "[a]ny

description of the goods which is made part of the basis of the bargain creates an express

warranty that the goods shall conform to the description." Id. § 2-313(1)(b).

As explained above, Plaintiff has not plausibly alleged that either of the representations at

issue were false or misleading. Defendant warranted that its mashed potatoes were "made with

real butter" and "made with fresh whole potatoes"—not that the mashed potatoes lacked

margarine or were themselves "fresh." Thus, the court dismisses Plaintiff's claim for breach of

express warranty.

### 2. Implied Warranty of Merchantability

"[T]he implied warranty of merchantability is a guarantee by the seller that its goods are

fit for the intended purpose for which they are used and that they will pass in the trade without

objection." Prue v. Fiber Composites, LLC, No. 11-CV-3304 (ERK), 2012 WL 1314114, at *10

(E.D.N.Y. Apr. 17, 2012) (quoting Wojcik v. Empire Forklift, Inc., 783 N.Y.S.2d 698, 700 (N.Y.

App. Div. 2004)). Privity between a plaintiff and a defendant is required for the plaintiff to

recover damages for financial injury in a breach-of-implied-warranty claim.[3] See Weisblum v.

Prophase Labs, Inc., 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015); Prue, 2012 WL 1314114, at *10-

11 (same).

---

[3] Plaintiff maintains that "a privity-like relationship can be established where one party 'hold[s] unique or special expertise,' sufficient to make the speaker aware that the other party would rely on the other information provided to them.'" (Pl. Opp'n to Mot. for Summ. J. (Dkt. 15) at 9 (quoting Suez Equity Inv'rs. L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2001).) Plaintiff is wrong. Suez Equity Inv'rs is inapposite because the excerpt quoted by Plaintiff did not relate to a warranty claim or a question of privity; instead, it concerned whether the "special relationship" element of a negligent-misrepresentation claim had been met. 250 F.3d at 103.

Plaintiff's injuries are financial. (See Am. Compl. ¶¶ 100-01). The required privity does not exist here because Plaintiff has not alleged that she purchased the product directly from Defendant. See, e.g., Prue, 2012 WL 1314114, at *11 (finding no privity because the plaintiff had failed to establish a direct contractual relationship between themselves and the defendant). Accordingly, Plaintiff's claim for breach of the implied warranty of merchantability cannot proceed.

### D. Unjust Enrichment

Plaintiff brings an unjust enrichment claim on the basis that "Defendant obtained benefits and monies because the [mashed potatoes] were not as represented, to the detriment and impoverishment of plaintiff and class members." (Am. Compl. ¶ 129.) This claim cannot succeed "because it merely duplicates [Plaintiff's] other claims based on the same alleged misrepresentations." Davis, 297 F. Supp. 3d at 338 (citing Corsello v. Verizon N.Y., Inc., 967 N.E.2d 1177, 1885 (N.Y. 2012)); see Bowring, 234 F. Supp. 3d at 392 (dismissing an unjust enrichment claim because it was duplicative of the plaintiff's other claims that had failed). "Unjust enrichment is not a catchall cause of action . . . . It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Davis, 297 F. Supp. 3d at 338 (alteration adopted) (quoting Corsello, 967 N.E.2d at 1885). Plaintiff has not properly alleged any such equitable obligation.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's (Dkt. 14) motion to dismiss Plaintiff's amended complaint is GRANTED in full.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      July 26, 2019

NICHOLAS G. GARAUFIS
United States District Judge